**Donato F. PIZZUTI, Plaintiff, Appellant,**

v.

**POLAROID CORPORATION,
Defendant, Appellee.**

**No. 92-1947.**

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1992.

Feb. 4, 1993.

Joseph J. Brodigan, with whom William D. Gardiner, James M. Langan, and Langan, Dempsey & Brodigan, Boston, MA, were on brief, for plaintiff-appellant.

Francis H. Fox, with whom Scott C. Moriearty, Marianne Meacham and Bingham, Dana & Gould, Boston, MA, were on brief, for defendant-appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Circuit Judge.

This appeal arises out of a summary judgment granted on behalf of Polaroid Corporation ("Polaroid") dismissing a breach of contract action brought by a former employee, Donato F. Pizzuti ("Pizzuti").[1] We affirm.

The crux of the lawsuit concerns the interpretation of Polaroid's Profit Shar-

---

*v. Great Lakes Plastics, Inc.,* 119 LRRM (BNA) 2191 (E.D.Mich.1985).

**1.** Although originally brought as a class action in the Massachusetts Superior Court, it was nev-

er certified as such either by the state court or by the district court after it was removed to the federal court.

ing Retirement Plan (the "Retirement Plan") as well as that company's Employee Incentive Compensation Plan (the "Bonus Plan") with respect to Pizzuti's contention that Polaroid's employer contributions from April, 1976 to January, 1986 were undersubscribed. Pizzuti based this contention on the winning and eventual settlement of a patent infringement suit by Polaroid against Eastman Kodak Co. ("Kodak") pursuant to which Kodak paid approximately $925 million in cash and short-term securities to Polaroid for infringements occurring from 1976 through 1986. Pizzuti contends that those payments require the restatement of Polaroid's profits for those years and in turn the payment of the additional benefits and bonuses that would have been received from these additional receipts.

Although Pizzuti objects to the granting of summary judgment, we believe otherwise. This is a classic case for summary judgment: no material facts are in dispute and disposition is dependent only on the legal interpretation of the Retirement and Bonus Plans. *See* Fed.R.Civ.P. 56. The standard of review of the district court's decision is *de novo*, as only issues of law are involved. *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir.1991).

■ The Retirement Plan is a contribution plan as defined in § 3(34) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1002(34), and is thus subject to construction pursuant to federal common law. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). In construing ERISA-governed plans, we apply "common-sense canons of contract interpretation." *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.) (quoting *Burnham v. Guardian Life Ins. Co.*, 873 F.2d 486, 489 (1st Cir.1989)), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). Although the Bonus Plan is governed by Massachusetts law, the standard of interpretation is similar, requiring the court to give nonambiguous terms their usual and ordinary meaning. *Ober v. Na-*

*tional Casualty Co.*, 318 Mass. 27, 30, 60 N.E.2d 90, 91 (1945).

A reading of the Plan leads us to the same conclusion reached by the district court: "[n]othing in the language of either plan requires Polaroid to revisit a previously-determined net profit and recalculate that figure based upon gains or losses resulting from subsequent litigation, or any other source." *Pizzuti v. Polaroid Corp.*, No. 91–13018–H, slip op. at 2, 1992 WL 465036 (D.Mass. July 9, 1992). Section 3.01 of the Retirement Plan provides:

[T]he term "net profit" for any Plan Year shall mean the total on a consolidated basis of the net earnings of [Polaroid and its subsidiaries] for such year (excluding gains from the sale, exchange or other disposition of capital or depreciable assets not in the ordinary course of business), as computed by [Polaroid's] accountants *in accordance with standard accounting practices* ... [Polaroid's] determination of such net profits shall be *conclusive for all purposes under the Plan.*

(Emphasis added.).

The undisputed evidence demonstrates that standard accounting practices require that litigation judgments or settlements may only be recognized as income in the year received. This fact is reinforced by Polaroid's recognition of the entire $925 million settlement amount as 1991 income, notwithstanding that Polaroid undoubtedly would have benefited under the tax code had it been allowed to redistribute this settlement as proposed by Pizzuti.

Section 3.01 of the Bonus Plan also provides for calculation of "net profits" on an annual basis "by the Company's accountants in accordance with standard accounting practices," and also states that "[t]he Company's determination of such net profit shall be conclusive for all purposes under the Plan."

There is nothing ambiguous in the indicated language of the Plans. *See ITT Corp. v. LTX Corp., supra* at 1261 (whether contract term is ambiguous is question of law for the court). It requires that net profits be determined annually, on the year

in which the income is received, and that the Company's determination in this respect is decisive and final as regards the Plans. There is nothing more to be said.

The judgment of the district court is *affirmed.* Costs to appellee.