T.C. Memo. 1997-556


UNITED STATES TAX COURT


A.C. GREEN ELECTRICAL CONTRACTORS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8794-95.                    Filed December 22, 1997.


<u>Bruce H. Guttman</u>, for petitioner.

<u>Peter J. Gavagan</u>, for respondent.


MEMORANDUM OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioner's Federal income and excise taxes for
petitioner's taxable years ending September 30, 1987, 1988, 1989,
and 1990, as follows:

| Taxable Year Ending | Income Tax Deficiency | Excise Tax Deficiency | Additions to Tax Sec. 6651 | Sec. 6659A |
|---|---|---|---|---|
| 9/30/87 | $61,816 | -- | -- | $18,555 |
| 9/30/88 | 55,075 | $22,679 | $ 5,670 | 16,523 |
| 9/30/89 | 52,970 | 45,359 | 11,340 | 15,891 |
| 9/30/90 | -- | 45,359 | 11,340 | -- |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the issue for decision is whether petitioner's contributions to its employee benefit plans exceeded the actuarial costs of funding retirement benefits provided under the plans.

## Background

This case was submitted fully stipulated by the parties pursuant to Rule 122. When the petition was filed, petitioner's principal place of business was located in New York, New York.

During the years in issue, Chaim Rozenblatt and Adam Jakubowicz each owned 50 percent of the stock of petitioner.

On July 1, 1987, petitioner adopted two defined benefit pension plans (the plans) -- one for the benefit of Rozenblatt and one for the benefit of Jakubowicz. The plans were drafted by Morris J. Silberstein, an actuary with Pensions & Forecasting Co. The plans were effective retroactively as of October 1, 1986.

For the years in issue, the plans constituted qualified pension plans under section 401, and Rozenblatt and Jakubowicz were the only participants in their respective plans.

Under section 3.02 of each plan, if Rozenblatt and Jakubowicz are not married at the time of retirement, each will receive what is referred to as a normal retirement benefit in the form of a single life annuity that will provide monthly payments commencing after retirement and continuing for each participant's life. Section 3.02 of each plan provides as follows:

> [Rozenblatt's or Jakubowicz's] Normal Retirement
> Pension computed under Section 3.01 shall be paid * * *
> in the form of a monthly annuity for his lifetime,
> commencing on the first day of the month following the
> date on which * * * [he] attains his Normal Retirement
> Date. Such normal form of payment shall be subject to
> any election made by such Participant under Article IV
> and V of this Agreement.

Under section 4.01 of each plan, however, if Rozenblatt and Jakubowicz are married at retirement, each will receive monthly annuity payments in the form of a qualified joint and survivor annuity (QJSA). Under a QJSA, periodic annuity payments are made over the joint lives of the participant and his spouse. The participant receives annuity payments for his life, and if the spouse survives the participant, the surviving spouse receives annuity payments for her life. Also under section 4.01 of each plan, Rozenblatt or Jakubowicz could elect in writing not to receive the QJSA and instead to receive simply a single life

annuity for his life.  Under this election, the surviving spouse would receive nothing.

Section 4.01 of each plan provides as follows:

> Notwithstanding the provisions of Article III, the benefits of * * * [Rozenblatt or Jakubowicz] having a spouse living on the date on which his benefits would commence because of his retirement on his Normal or Deferred Retirement Date or earlier commencement of benefits shall be paid in the form of a * * * [QJSA] unless, within 90 days prior to such date (or within such longer or shorter period as may be deemed reasonable by the Secretary of the Treasury), he elects in writing not to take such annuity. * * *

Under section 1.25 of each plan, the QJSA provided under each plan is defined as a joint and 100-percent survivor annuity (i.e., each surviving spouse is to receive as a survivor annuity the same annuity payment that her husband is to receive during his life).  Under section 1.25 of each plan, the QJSA is defined further as a joint and 100-percent survivor annuity that is equivalent in value to a participant's retirement pension. Section 1.25 of each plan provides as follows:

> [QJSA] means an annuity for the life of * * * [Rozenblatt or Jakubowicz] with a survivor annuity for the life of the spouse * * * which is the actuarial equivalent of his Retirement Pension.  The Survivor Annuity shall be the same amount the annuitant was receiving.

Under the plans, "actuarial equivalent" means equal in present value.

"Retirement Pension" is defined in the plans as "the monthly payment to which * * * [Rozenblatt or Jakubowicz] shall become entitled pursuant to the terms * * * [of the plans]".

Under the plans, the trustee, the administrator, and the actuary were not expressly given discretionary authority to interpret plan provisions, and funding decisions of the trustee, the administrator, and the actuary were not to be regarded as final and unreviewable.

During the years in issue, Rozenblatt and Jakubowicz each were married.

For each of the years in issue, Silberstein, the actuary who drafted the plans, made actuarial valuations and made funding decisions with regard to the plans. In calculating petitioner's yearly contributions to the plans, Silberstein concluded that Rozenblatt and Jakubowicz each were entitled to receive a benefit in the form of a <u>subsidized</u> joint and 100-percent survivor annuity (i.e., a joint and 100-percent survivor annuity under which Rozenblatt and Jakubowicz each would receive the full present value of a single life annuity during their lives).

The present value of a subsidized joint and 100-percent survivor annuity generally exceeds the present value of a single life annuity for the life of each participant because each participant receives the full present value of a single life annuity during the participant's life and also each surviving

spouse receives additional annuity payments after the participant's death.

On the basis, in part, of Silberstein's treatment of the plans as establishing subsidized joint and 100-percent survivor annuities for Rozenblatt and Jakubowicz and their spouses, petitioner made contributions to the plans in the total amounts of $227,646, $226,794, and $226,794, respectively, for each of the years 1987, 1988, and 1989.

On its Federal income tax returns for years ending September 30, 1987, 1988, and 1989, petitioner claimed deductions under section 404 for the above total respective contributions to the plans in each year.

For the year ending September 30, 1990, petitioner did not make any deductible contributions to the plans, and no deduction with regard thereto was claimed on petitioner's 1990 Federal income tax return.

On audit of petitioner for 1987, 1988, and 1989, respondent treated Rozenblatt and Jakubowicz as receiving under the plans only a reduced joint and 100-percent survivor annuity.  The present value of a reduced joint and 100-percent survivor annuity equals the present value of a single life annuity for the life of the participant (i.e., the value of a single life annuity for the life of the participant is spread over the actuarial life expectancies of the participant and the spouse).

On the basis of respondent's determination that Rozenblatt and Jakubowicz were entitled to receive only reduced joint and 100-percent survivor annuities and after several other adjustments not relevant herein, respondent disallowed as excess contributions for 1987, 1988, and 1989, respectively, $177,505, $177,760, and $175,454 of the total claimed deductions relating to the plans.

Also, for 1988, 1989, and 1990, respondent determined that petitioner was liable for excise taxes under section 4972 with regard to the portion of petitioner's contributions to the plans that, in respondent's view, constituted excess contributions.

## Discussion

Generally, employers may deduct contributions to qualified pension plans that fund retirement benefits for plan participants. Sec. 404(a)(1)(A). Such contributions, however, for Federal income tax purposes, are deductible by employers only to the extent contributions to the plans do not exceed the actuarially projected costs of funding benefits provided under the plans. Sec. 1.404(a)-3(b), Income Tax Regs. Section 1.404(a)-3(b), Income Tax Regs., provides: "In no event shall costs for the purpose of section 404(a)(1) exceed costs based on assumptions and methods which are reasonable in view of the provisions and coverage of the plan".

Courts have interpreted the language of employee benefit plans using principles of contract and trust law. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-115 (1989); Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996); Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 88-89 (4th Cir. 1996); Kemmerer v. ICI Americas, Inc., 70 F.3d 281, 288 (3d Cir. 1995); Sayers v. Rochester Tel. Corp., 7 F.3d 1091, 1094-1095 (2d Cir. 1993); Pizzuti v. Polaroid Corp., 985 F.2d 13, 14 (1st Cir. 1993).

Language used in employee benefit plans is generally interpreted according to its common and ordinary meaning, and an effort is made to give meaning to all language of the plans. Chiles v. Ceridian Corp., supra; Sayers v. Rochester Tel. Corp., supra at 1094-1095.

Where employee benefit plans do not specifically provide trustees or plan administrators with discretionary power to interpret plan provisions and where the plans do not provide that trustees' and administrators' decisions should be given deference, interpretations given to the language of plans by trustees or administrators are not entitled to any particular deference. Firestone Tire & Rubber Co. v. Bruch, supra at 111-112; Masella v. Blue Cross & Blue Shield of Conn., Inc., 936 F.2d 98, 103 (2d Cir. 1991).

Taxpayers bear the burden of proof with regard to claimed deductions. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Petitioner argues that under the plans involved herein the married participants (namely Rozenblatt and Jakubowicz) are entitled to receive QJSA's in the form of subsidized joint and 100-percent survivor annuities. Petitioner argues that the trustee was given discretionary power to interpret the plans and that the Court should defer to the trustee's interpretation of the plans.

Respondent argues that under the plans, Rozenblatt and Jakubowicz are entitled to receive QJSA's in the form of only reduced joint and 100-percent survivor annuities and that contributions to the plans in excess of what was required to fund such reduced joint and 100-percent survivor annuities are not deductible. Respondent emphasizes that the actuary did not have discretionary power under the plans to interpret plan language, and respondent contends that the actuary's funding decisions should be given little or no deference.

We generally agree with respondent's interpretation of the language of the plans.

Under the plans, the trustee, the administrator, and the plan actuary were not given deference in interpreting the plans and in making funding decisions. Accordingly, we are not

required herein to give petitioner's interpretation of the plans any particular deference. Firestone Tire & Rubber Co. v. Bruch, supra at 110-115.

The term "QJSA" is defined only in section 1.25 of each plan. Section 1.25 of each plan defines QJSA as a joint and 100-percent survivor annuity, "which is the actuarial equivalent of * * * [the participant's] Retirement Pension." As indicated, "actuarial equivalent" means equal in present value. The phrase "which is the actuarial equivalent of * * * [the participant's] Retirement Pension" implies an equivalence in value of two different retirement benefits--namely, each participant's normal retirement pension and the joint and 100-percent survivor annuity. Each plan describes a participant's normal retirement pension in terms of a single life annuity. When read in the context of the entirety of the plans, section 1.25 quantifies the joint and 100-percent survivor annuity as the actuarial equivalent of a single life annuity for the life of each participant, or the normal retirement benefit provided under section 3.02 of each plan. Accordingly, we conclude that under section 1.25 of each plan, Rozenblatt and Jakubowicz each receive a joint and 100-percent survivor annuity that has the same present value as a single life annuity for the life of each married participant (i.e., a reduced joint and 100-percent survivor annuity).

We note that with regard to qualified plans, a QJSA is generally defined in the Code and regulations in terms of a reduced joint and survivor annuity. See sec. 417(b); sec. 1.401(a)-11(b)(2), Income Tax Regs.

Petitioner has not identified any plan language which logically establishes a subsidized joint and 100-percent survivor annuity as a form of benefit for Rozenblatt and Jakubowicz.

For the above reasons, we agree with respondent's interpretation of the language of the plans, and we conclude that under the plans, Rozenblatt and Jakubowicz receive retirement benefits in the form of joint and 100-percent survivor annuities that have the same present value as single life annuities for the life of each participant or reduced joint and 100-percent survivor annuities. Accordingly, the portion of petitioner's contributions to the plans that exceed the costs of funding retirement benefits for Rozenblatt and Jakubowicz in the form of reduced joint and 100-percent survivor annuities was properly disallowed by respondent.

To reflect the foregoing,

Decision will be entered under Rule 155.