Moise **VASSEUR, Plaintiff–Appellee,**

v.

**HALLIBURTON CO., and Halliburton Co. Retirees Medical Plan, Defendants–Appellants.**

No. 90–4861.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1992.

Virginia N. Roddy, Preaus, Roddy & Krebs, New Orleans, La., for defendants-appellants.

Elwood C. Stevens, Jr., Kleinpeter, Schwartzberg & Stevens, Morgan City, La., John A. Mouton, III, Mouton & Alexander, Lafayette, La., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS, and BARKSDALE, Circuit Judges.

CLARK, Chief Judge:

Moise Vasseur, a retired employee of Halliburton Company (Halliburton), brought this ERISA[1] action on behalf of his son Gregory to establish Gregory's right to reimbursement from Halliburton's medical plan for expenses Gregory incurred during treatment at Tangram Rehabilitation Network (Tangram). The district court determined the plan administrator acted arbitrarily and capriciously in denying coverage and the plan was not entitled to subrogation for third party payments. Halliburton and the plan appeal.

The district court erroneously construed the plan's hospital coverage to include Tangram. That part of its judgment permitting cost recovery is reversed. The court's dismissal of the plan's counterclaim for subrogation was premature. It is vacated and remanded with directions. The declaration of Gregory's entitlement to coverage for future benefits is modified. The award of attorneys' fees is vacated.

## I.

Since 1980, Halliburton has maintained a series of plans covering medical expenses incurred by its employees (plans). Since 1981, it also has provided such coverage plans for retirees. Initially the plans were operated through an insurance company. Later plans have been funded by the Halliburton employees trust fund and administered by a plan administrator. Coverage and benefits provisions have been amended from time to time.[2]

---

1. Employee Retirement Income and Security Act, 29 U.S.C. § 1001 *et seq.* Section 1132(a)(1)(B) authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan".

2. The following is a very brief chronology of significant events:

1980 Life Insurance Company of the Southwest issues Policy No. 538, creating Halliburton Group Medical Plan. Vasseur, an active employee, is covered.

1981 Policy 538 is amended to include retirees and narrow the definition of hospital by requiring they be licensed.

2/17/83 Gregory's accident claim is made and accepted under the active employee portion of Policy 538.

6/15/83 Vasseur retires and elects to become a participant in the retiree portion of Policy 538. The lifetime maximum benefit at this time was $250,000 for active employees and $100,000 for retirees.

1984 Halliburton establishes a new Halliburton Medical Plan funded by its employee trust fund. Vasseur elects to become covered under the retiree portion of that plan.

Moise Vasseur was an active employee participant in Halliburton's plans until June 15, 1983, the date he retired. Thereafter he was covered by medical plans applicable to retired employees. All plans involved in this action are employee benefit plans which provide medical benefits to qualified employees and former employees of Halliburton Company and their eligible dependents. All are governed by ERISA.

Gregory, an eligible dependent of Moise, was seriously injured in a motorcycle accident on February 17, 1983. He received head injuries that render him unable to take care of himself. After periods of hospitalization and treatment elsewhere, he entered Tangram, a rehabilitation facility in San Marcos, Texas. Tangram treats head-injured individuals in a noninstitutional, rural environment. It is a transitional facility for head-injured individuals caught in limbo between the hospital and reentry into society.

On the date of Gregory's accident the applicable Halliburton employee medical plan contained a definition of "hospital" which required that the institution be licensed as a hospital. A prior plan, which was in effect from September 1980 until January 1, 1981, did not contain this limitation. The plan which became effective on the latter date and all subsequent plans have limited reimbursement for hospital charges to licensed hospitals. In June 1983, after Gregory's accident, Moise retired and Gregory became covered as a dependent of a retired employee. All plans for retirees and their dependents have covered only licensed hospitals. All plans have provided that changes in coverage could be made without the consent of plan beneficiaries.

The 1987 plan contained a limitation on amendments that provided that any amendment must be without prejudice to any

claim arising prior to such action. The 1986 and 1987 plans give the plan administrator final responsibility for interpreting plan terms.

Gregory submitted claims to the plan for medical charges related to injuries he sustained in the February 1983 accident. The plans paid claims he submitted from 1983 through 1986. The plan administrator refused payment, however, for charges covering treatment at Tangram, giving as reasons that Tangram did not qualify as a hospital under the plan and the plan did not cover custodial care, occupational therapy, exercise programs and remedial and/or educational evaluation and/or therapy.

The plan in effect on the date of the accident did not contain a subrogation provision. The plans in effect for subsequent years did have subrogation clauses. In the 1987 plan, the subrogation provision was substantially modified.

Vasseur originally filed a declaratory judgment action in state court. Halliburton removed the action to the district court. The plan was joined and it counterclaimed for subrogation for the benefits it had paid.

The case was submitted on uncontested facts to the court. It awarded Vasseur the charges Gregory incurred at Tangram plus attorneys' fees. The court also issued a declaratory judgment as to the applicable lifetime maximum benefits and dismissed the plan's subrogation counterclaim. Halliburton and the plan appealed.

## II.

Halliburton and the plan contend the district court erred: 1) in its application of the 1987 limited change provision to include Tangram as a covered hospital; 2) in finding the plan administrator's application of the plan to Gregory's claims was arbitrary and capricious; 3) in denying the plan the

1986  Halliburton Medical Plan provides a lifetime maximum benefit limit of $100,000 for retirees and their eligible dependents. Hospital is defined in substantially the same terms as in the 1981 plan. Vasseur's claims for Tangram Facility coverage are denied.

1/1/87  Halliburton Retiree Medical Plan is created. Vasseur elects coverage. Plan pro-

vides it is subject to amendment but without prejudice to any claim arising before amendment. The lifetime maximum benefit is $500,000.

1989  Halliburton Retiree Medical Plan amended.

right to subrogation against third parties; 4) in holding Halliburton was an ERISA fiduciary and 5) in awarding attorneys' fees to Vasseur.

### A. *Standard of Review*

■ The Supreme Court in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 108, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989) considered "the appropriate standard of review to apply in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." The Court held that "a denial of benefits ... is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. In cases where the plan grants the plan administrator such discretion, a deferential, arbitrary and capricious standard of review applies. *See Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1556 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991).

■ Because the applicable plan gives the plan administrator discretion to construe plan terms, the arbitrary and capricious standard applies. We reject Vasseur's contention that a *de novo* standard should apply because the plan administrator had a conflict of interest. The plan provisions he relies on in arguing that such a conflict of interest existed are not contained in the plan applied in the determination not to pay the Tangram charges.

### B. *Coverage*

The district court held:

[T]he 1987 ... plan states that no amendment can be made to the prejudice of a claim arising prior to the amendment. As Vasseur was covered at the time of Gregory's accident under the provisions of the Halliburton Medical Plan containing the less restrictive definition of "hospital", he retains this benefit. The court finds that Tangram is a covered facility within the terms of the plan and that defendants were arbitrary and capricious in not finding so.

Halliburton and the plan contend this holding was error because the 1987 plan containing the limited amendments clause the court relied upon is not applicable to Gregory's claim and because the 1980 plan, whose definition of "hospital" the district court adopted, was amended before the accident and before charges were incurred at Tangram. We agree.

■ ERISA applies to two types of "employee benefit plans": "employee welfare benefit plans" and "employee pension benefit plans." *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976 (5th Cir.1991) (citing 29 U.S.C. § 1002(3)). This case concerns the former, which ERISA defines as, *inter alia,*

any plan, fund, or program which ... is ... maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries ... (A) medical, surgical, or hospital care or benefits....

29 U.S.C. § 1002(1). Contrary to the vesting requirements ERISA imposes on pension plans, *see, e.g.,* 29 U.S.C. § 1053, it does not require that welfare plan benefits "vest" or that an employer maintain them at a particular level. *McGann v. H & H Music Co.,* 946 F.2d 401, 405 (5th Cir.1991). *See also Alday v. Container Corp. of Am.,* 906 F.2d 660, 663 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); *Musto v. American Gen. Corp.,* 861 F.2d 897, 901 (6th Cir. 1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); and *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988).

■ An employer can oblige itself contractually to maintain benefits at a certain level in ways that are not mandated by ERISA. *E.g., Ryan v. Chromalloy Am. Corp.,* 877 F.2d 598, 603 (7th Cir.1989); *see also Alday,* 906 F.2d at 665. Absent such a contractual assurance, ERISA permits an employer to decrease or increase benefits. However, the plan must be maintained pursuant to a plan document. 29 U.S.C. § 1102(a)(1).

The district court erred in concluding that the plan administrator acted arbitrarily and capriciously in relying on the 1986 plan. First, because ERISA does not require that medical plan benefits vest, Gregory was not entitled to "retain[ ] the benefit" of language in earlier plan versions. Second, the less restrictive definition of hospital contained in the 1980 plan did not apply. As the parties stipulated, the modified 1981 plan was in effect on the date of the accident. Third, the 1987 plan requirement that amendments "shall be without prejudice to any claim arising prior to such action," did not operate retroactively to create rights which were not provided in earlier plans.

The starting point for determining Vasseur's rights under the plans is the actual language used. *Musto*, 861 F.2d at 900. The claim for Gregory's charges at Tangram was made under the 1986 plan. It provides that the "incurred date" of a charge or expense is "the date on which a particular service or supply which gives rise to the expense or charge is rendered or obtained."

The plan administrator's decision to apply the plan in effect on the date Gregory's charges were incurred was not arbitrary and capricious. Tangram was not a hospital within the meaning of the applicable plan. The district court erroneously relied on plan language defining "hospital" in the 1980 plan. The 1981 plan amendment limiting coverage to licensed hospitals applied to retirees as well as to active employees when Gregory was injured. It was the applicable plan when Gregory's claim arose and the licensing condition has been a requirement of every subsequent plan. The district court mistakenly reasoned that the 1987 plan provision limiting future amendments to those that did not prejudice a claim arising prior thereto had restrictive effect.

Vasseur concedes that Tangram is not licensed as a hospital by the state of Texas. And, the only plan that does not require a

covered hospital facility to be licensed as a hospital is the 1980 plan which was amended before any claim was made by Vasseur. This makes it unnecessary to decide whether Tangram provides 24–hour nursing care—a requirement for hospital coverage even under the 1980 plan.

The plan administrator did not act arbitrarily and capriciously in evaluating Vasseur's claim under the 1986 plan, nor in concluding that Tangram was not covered. We reverse the district court's judgment awarding Vasseur expenses for treatment at Tangram and render judgment in favor of appellants on that claim.

### C. *Subrogation*

The district court dismissed the plan's counterclaim for subrogation for medical benefits paid because of Gregory's injuries. The court reasoned that because "the Plan first inserted the subrogation right in the Plan after Gregory's accident and medical claim arose, the Plan cannot assert it now to prejudice Vasseur's Claim."[3]

As stated above, the 1987 plan provision limiting amendments to those that do not prejudice prior claims does not operate retroactively to foreclose the Plan from asserting subrogation rights which vested when benefits previously were paid. The plan's subrogation rights depend on the provisions of the particular plan then in effect when expenses were incurred or claims were paid.

The record is unclear as to when a subrogation clause became a part of any plan. Vasseur and the district court indicate it was not present until the 1986 plan. An exhibit in the record shows such a clause was part of the 1984 plan. Proper adjudication of subrogation rights requires resolution of this conflict.

Whether subrogation rights were conferred and, if so, what those rights were depends on accurate facts as to timing and content of plan amendments as related to

---

**3.** On appeal, the parties do not raise the issue of whether the plan's demand for subrogation was timely.

maturity and payment of claims. These matters depend on a clarified record. After such clarification, the district court must determine applicability and conditions of any subrogation provision.

We vacate the district court's ruling dismissing the subrogation counterclaim and remand that claim for further proceedings consistent with this opinion.

### D. *Fiduciary Status*

The district court found Halliburton was an ERISA fiduciary. Vasseur asserted no claim for breach of fiduciary duty. Rather, he seeks to hold Halliburton, as well as the plan itself, liable for reimbursement of plan covered charges incurred at Tangram. Because the plan administrator did not act arbitrarily and capriciously in refusing to pay the Tangram charges, no reimbursement of expenses was due under the plan. Halliburton's status as an ERISA fiduciary is moot.

### E. *Attorneys' Fees*

29 U.S.C. § 1132(g)(1) provides: "In any action under this [ERISA] subchapter ... by a participant [or] beneficiary ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

In *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980) (footnote omitted), we enunciated factors to be considered in awards of attorneys' fees in ERISA cases:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award ... would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*See also Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351, 358 (5th Cir.1991).

Under these factors, the award of attorneys' fees to Vasseur was improper. We vacate the district court's award.

### F. *Lifetime Maximum Benefit*

The district court's judgment declared that Gregory was entitled to a lifetime maximum benefit of $500,000. That is the limit adopted for covered dependents of retirees in 1987. Halliburton and the plan contend that the district court erred in making this declaration.

As noted, ERISA does not require that any right ever included in a plan shall become vested in plan beneficiaries from that time forward. Plan terms are subject to modification unless the plan itself provides otherwise. These principles apply to plan changes modifying the lifetime maximum benefits. *See McGann,* 946 F.2d at 405. The question on this appeal is whether the plan provided otherwise.

In 1987 the plan included this provision: "The Medical Plan is subject to amendment or termination as determined to be appropriate by the Executive Committee of the Halliburton Company. Any such action shall be without prejudice to any claim arising prior to such action." We know it is probable that Gregory will continue to incur medical treatment expense in the future. However, the court's terse declaration that "plaintiff is entitled to a maximum benefit of dependent coverage for Gregory in the amount of FIVE HUNDRED THOUSAND AND NO/100 ($500,-000.00) DOLLARS" may sweep too broadly in fixing future rights. Gregory could be entitled to the benefit of the 1987 plan increase in lifetime maximum benefits to $500,000 if he continued to incur covered medical expenses which were part of his prior 1983 claim.

Vasseur continued to pay his share of plan costs after the 1987 lifetime maximum benefit and limitation on amendments provisions were inserted. Gregory thus became eligible for the benefit, if any, which these plan provisions conferred. It remains unknown at this time what those benefits may be. The plan has not paid covered expenses incurred by Gregory in

excess of the maximum limit initially provided. The plan administrator has never been called on to interpret the last sentence of the limited amendment provision. We decline to predict whether the administrator will construe future sequela of Gregory's 1983 injury as "claim[s] arising prior to" any future amendments that are proposed that would seek to reduce or otherwise limit the $500,000 lifetime maximum benefit. If the administrator determines covered expenses which Gregory incurs to be claims arising prior to amendment, Gregory's right to reimbursement would be protected by the limited amendment language and cannot be prejudiced. Any such entitlement would flow, not from ERISA, but from the terms of the plan. Until the administrator is required to rule on the status of a covered claim made by Gregory, however, the grant of declaratory relief would be premature.

### III.

For the foregoing reasons, the judgment awarding benefits for treatment at Tangram is REVERSED and judgment is RENDERED in favor of Halliburton and the plan; dismissal of the plan's subrogation counterclaim is VACATED and the claim is REMANDED for a determination, consistent with this opinion, of whether the plan is entitled to relief; the award of attorneys' fees is VACATED; and the declaration of Gregory's entitlement to future benefits is VACATED in accordance with the views set forth in this opinion.

REVERSED and RENDERED in part, and, in part, VACATED and REMANDED.