**UTILITY WORKERS, LOCAL 369, Robert J. Dupre, et al., Plaintiffs**

v.

**NSTAR ELECTRIC AND GAS CORPORATION, Defendant.**

**No. CIV.A.03–10530–EFH.**

United States District Court, D. Massachusetts.

May 12, 2004.

Paul F. Kelly, Segal, Roitman & Coleman, Boston, MA, for Local 369 Utility Workers, Milton Jenkins, Ruth Rebello, Mary Vieira, Mary Souza, Antone Bernardo, Emile Cipriani, Jeanne Carrier, Robert Tavares, Henry Knutsen, Vincent Crowley, Elizabeth Mitchell, Cynthia Prsybyszewski, John Whalen, Andrew Woodacre, Arnett Peccini, Plaintiffs.

Keith B. Muntyan, Morgan, Brown & Joy, Robert P. Morris, Morgan, Brown & Joy, Boston, MA, for Nstar Electric & Gas Corporation, Roxanne Beth Bungert, Defendant.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

The plaintiffs allege that the defendant violated federal and state laws when it changed certain retirement benefits to which the plaintiffs were entitled. The plaintiffs include Utility Workers Local 369 ("the Union") and twenty-five individuals who retired from working for Commonwealth Energy ("Commonwealth"), which was merged with another corporation to form the defendant, NSTAR Electric and Gas Corp. ("NSTAR"). NSTAR has moved for summary judgment on all claims. NSTAR's motion is granted.

## I. BACKGROUND

NSTAR was created in 1999 by the merger of two companies, Boston Edison Co. ("Boston Edison") and Commonwealth. Prior to the merger, Boston Edison and Commonwealth maintained their own health insurance plans for retirees. After the merger, NSTAR retained these two separate plans until April 1, 2003, when it decided that Commonwealth retirees should be covered under the same plan as the Boston Edison retirees. The plaintiffs allege that they were entitled to a lifetime of unaltered coverage under the Commonwealth plan. According to the plaintiffs, switching to the Boston Edison plan caused them to pay more money for their health care or caused them to lose certain benefits that were covered by their previous plan. NSTAR maintains that the new plan is actually more generous than the Commonwealth retirees' previous plan.

The plaintiffs' amended complaint contains six counts. These include a claim for breach of collective bargaining agreements in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; a claim for breach of employee benefit plan provisions in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132; a claim of promissory estoppel under the LMRA; a claim of promissory estoppel under ERISA; a state law claim for breach of contract; and a state law claim

for misrepresentation. The complaint sought a permanent injunction against NSTAR, class certification, a clarification of the plaintiffs' rights, damages, and attorney's fees. After the complaint was filed, the plaintiffs moved for a preliminary injunction and class certification, but both motions were denied. NSTAR then filed the pending motion for summary judgment on all claims.

## II. *DISCUSSION*

A motion for summary judgment should be granted in favor of the defendant when the evidence, taken in the light most favorable to the plaintiff, shows that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. *See Rocafort v. IBM Corp.,* 334 F.3d 115, 119 (1st Cir.2003). The heart of this case is the plaintiffs' claims for breach of collective bargaining agreements in violation of the LMRA, and breach of employee benefit plan provisions in violation of ERISA. Before delving into those matters, the Court quickly addresses the plaintiffs' state law and estoppel claims.

■ The First Circuit has held that ERISA "broadly preempts any state law claim that 'relate[s] to' an employee benefit plan...." *Hotz v. Blue Cross and Blue Shield of Mass., Inc.,* 292 F.3d 57, 60 (1st Cir.2002). In this case, the plaintiffs' state law breach of contract and misrepresentation claims both relate to NSTAR's alleged representation that the plaintiffs' benefit plans would not change. These claims necessarily have "a connection with or reference to" the benefit plan itself. *Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 794 (1st Cir.1995). Thus, the plaintiffs' state law claims for breach of contract and misrepresentation are preempted by federal law and are dismissed. *See Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 277 (1st Cir.2000) (affirming dis-

trict court's ruling that plaintiff's state law breach of contract claim was preempted by ERISA); *Carlo,* 49 F.3d at 794 (plaintiff's state law misrepresentation claim preempted by ERISA).

■ Preemption, however, does not apply to the plaintiffs' promissory estoppel claims because they are brought under the LMRA and ERISA, not under state law. The Court examines the LMRA promissory estoppel claim first. The defendant points to Sixth Circuit precedent holding that "[t]he federal common law of contract applicable under the LMRA includes the doctrine of promissory estoppel." *Anderson v. AT&T Corp.,* 147 F.3d 467, 477 (6th Cir.1998). This means that while promissory estoppel may be asserted as part of an LMRA breach of contract claim, it "cannot be brought as an independent cause of action...." *Bish v. Aquarion Servs. Co.,* 289 F.Supp.2d 134, 148 n. 9 (D.Conn.2003); *see also Duran v. AT & T Corp.,* 2000 WL 33592869, *8 (S.D.Ohio 2000). In their papers opposing summary judgment, the plaintiffs make no developed counter argument on this issue and offer no authority to the contrary. Accordingly, the Court finds the Sixth Circuit precedent to be persuasive. The plaintiffs' separate claim of promissory estoppel under the LMRA is dismissed.

■ The plaintiffs' ERISA promissory estoppel claim is also unavailing. An ERISA estoppel claim arises under the federal common law and is considered a form of "appropriate equitable relief" that is available under Section 1132(a)(3) of ERISA. *See Reid v. Gruntal & Co., Inc.,* 763 F.Supp. 672, 678 (D.Me.1991); *see also Ctr. v. First Int'l Life Ins. Co.,* 1997 WL 136473, *13 (D.Mass.1997). However, equitable relief under Section 1132(a)(3) is not appropriate when "Congress elsewhere provided adequate relief for a beneficiary's injury." *Varity Corp. v. Howe,* 516 U.S.

489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *see also Larocca v. Borden, Inc.,* 276 F.3d 22, 28–29 (1st Cir.2002). In this case, Congress provided the plaintiffs with an adequate, alternative form of relief in the form of Section 1132(a)(1)(B), which provides plaintiffs with a cause of action "to recover benefits due ... under the terms of [the] Plan." Indeed, the plaintiffs have pursued this alternative cause of action in their amended complaint.[1] In light of this alternative claim, the plaintiffs' separate cause of action for promissory estoppel under ERISA is not "appropriate equitable relief," and is dismissed. *See King v. UNUM Life Ins. Co. of Am.,* 221 F.Supp.2d 1, 4–5 (D.Me.2002).

Having dismissed the plaintiffs' two state law claims and two promissory estoppel claims, the Court now addresses the primary issues in this case, namely the plaintiffs' claims for breach of collective bargaining agreements in violation of the LMRA, and breach of employee benefit plan provisions in violation of ERISA.

The Court begins with the LMRA claim. The plaintiffs argue that summary judgment is not appropriate on this claim because the collective bargaining agreements are ambiguous.[2] This ambiguity, according to the plaintiffs, means that interpreting the agreements is a question of fact best left for the jury.

 Collective bargaining agreements are contracts governed by federal common law. *See Textile Workers v. Lincoln Mills of Ala.,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Generally speaking, contract interpretation is a legal question

for the court, unless the contract is ambiguous, in which case the interpretation may become a fact question for the jury. *See Casey v. Lifespan Corp.,* 62 F.Supp.2d 471, 480 (D.R.I.1999). Whether a contract is ambiguous in the first instance is a matter of law for the court. *See Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49, 53 (1st Cir.2001). A contract is ambiguous if "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Id.* (quoting *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1084 (1st Cir.1989)). The plaintiffs argue that ambiguity stems from language in the collective bargaining agreements that states:

> [E]ligible employees ... will be covered ... under the terms and conditions of Blue Cross and Blue Shield of Massachusetts Master Medical Certificate, MM CES 3, as amended, or Medex Subscriber Certificate, Medex CES 1, as amended, the provisions of which are made a part of this Contract.

Similar language was used regarding the dental benefits plan offered by the defendant. The plaintiffs contend that the phrase "eligible employees" could be construed to include retirees and that "will be covered" could mean a lifetime of unaltered coverage under the specified plans. NSTAR argues that the phrase "eligible employees" refers only to people currently working, not retirees. NSTAR further argues that the contract provides no indication that coverage would extend beyond

---

1. Count II of the complaint contains a claim for "breach of plan provision under ERISA," in which the plaintiffs allege that NSTAR has denied the plaintiffs "benefits due them under the terms of the plans." Although Count II makes no reference to any particular subsection of ERISA, the plaintiffs' memorandum in opposition to NSTAR's motion for summary

judgment concedes that Count II is governed by Section 1132(a)(1)(B).

2. The plaintiffs are covered by multiple collective bargaining agreements. The parties agree, however, that the relevant portions of all the collective bargaining agreements are substantially the same.

the expiration date of each collective bargaining agreement.

The place to start is with the phrase "will be covered." When interpreting a contract, this Court cannot view words or phrases in isolation. *See Cochran v. Quest Software, Inc.*, 328 F.3d 1, 7 (1st Cir.2003). Instead, the language of a contract must be given "a construction which comports with the Agreement as a whole." *See Fashion House*, 892 F.2d at 1084. In this case, the collective bargaining agreements do not define the phrase "will be covered." The collective bargaining agreements do, however, explicitly incorporate the provisions of the Master Medical, Medex and dental benefit plans. The Master Medical, Medex and dental benefit plans, in turn, explicitly state that the plans can be changed or cancelled.[3] In light of these facts, the terms of the collective bargaining agreements are not inconsistent, nor can there be reasonable differences of opinion regarding the meaning of the phrase "will be covered." *See In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 58 F.3d 896, 903–04 (3d Cir.1995) ("the fact that the ... plans used terms such as 'lifetime' or 'for life' to describe the duration of retiree medical benefits, while at the same time expressly reserving the company's right to terminate the plans under which those benefits were provided, did not render the plans 'internally inconsistent' and therefore ambiguous."). When the benefit plans and the collective bargaining agreement are read as a whole contract, it is clear that the phrase "will be covered" cannot mean a lifetime of unaltered coverage, as the plaintiffs contend, because the health benefit plans contain language in which the insurance company and NSTAR reserve the right to change or cancel coverage. *See DeGeare v. Alpha Portland Indus., Inc.*, 837 F.2d 812, 816 (8th Cir.1988) (holding employer's promise that retiree benefits "will continue" did not create vested lifetime benefits in the face of a termination clause), vacated and remanded on other grounds, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989). In short, the contract is not ambiguous and its interpretation is therefore a question of law for the court. *See Lohnes*, 272 F.3d at 53. The Court holds that by incorporating the terms of the Master Medical, Medex and dental benefit plans, the collective bargaining agreements at issue in this case did not prohibit NSTAR from making the types of changes at issue here. The plaintiffs' claim for breach of a collective bargaining agreement in violation of the LMRA is dismissed.

The plaintiffs raise one counter argument that is particularly worthy of discussion. The plaintiffs contend that the collective bargaining agreements provided a lifetime of unaltered coverage because some plaintiffs received benefit summaries that stated "your medical insurance coverage will be for your life" and "your dental coverage will be for your life." The benefit summaries, however, were not incorporated into the terms of the collective bargaining agreements, as were the provisions of the Master Medical, Medex and dental benefit plans themselves. Therefore, the benefit summaries are not relevant to interpreting the terms of the collective bargaining agreements. Even if they were relevant, the benefit summaries explicitly state that "the Company reserves the

---

**3.** The Master Medical plan, for example, stated that "[w]e may change a part of the contract," and that "[y]our plan sponsor may cancel your contract for any reason." Similarly, the Medex plan stated "Blue Cross and Blue Shield will cancel your membership under this certificate only when ... [y]our group terminates the contract." The Delta Dental Plan of Massachusetts also provided that "[y]our plan sponsor may cancel your contract for any reason."

right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime." More importantly, the summaries provide that "[i]f any conflict arises between this description and the Plan document, or if we do not cover any point, the terms of the Plan document will always govern." It is clear that the plan documents, not the plan summaries, control. As has already been explained, the plan documents clearly allow for the plans to be changed or cancelled. *See Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 856 (4th Cir.1994) ("[E]xpress reservation of the company's right to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits."); *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1519 (8th Cir.1988) (holding that employer's promise to provide welfare benefits "until death of retiree" did not create vested rights because employer had expressly reserved the right to terminate or amend the plan).

■ In light of this Court's holding regarding the phrase "will be covered," it is not necessary to explore the meaning of "eligible employees." Even if the collective bargaining agreements applied to retirees, the plaintiffs would still not have a viable claim because, as this Court has already held, the collective bargaining agreements did not provide for unaltered, lifetime coverage. Before leaving the plaintiffs' LMRA claim, a brief word must be said about promissory estoppel. As the Court mentioned previously when discussing the plaintiffs' LMRA estoppel claim, "[t]he federal common law of contract applicable under the LMRA includes the doctrine of promissory estoppel." *Anderson*, 147 F.3d at 477. The Court, however,

need not consider the estoppel issue as part of the plaintiffs' claim for breach of collective bargaining agreements given that the agreements themselves are unambiguous. The First Circuit has explained that in order for estoppel to apply "a preliminary showing of ambiguity is required; estoppel may not be invoked to enlarge or extend the coverage specified in a contract." *Gaskell v. Harvard Coop. Soc'y*, 3 F.3d 495, 502 n. 10 (1st Cir.1993) (citation and quotation marks omitted).

■ The Court now turns to the second major issue in this case, namely, the plaintiffs' allegation in Count II of the amended complaint that the defendant breached benefit plan provisions in violation of ERISA. It must be noted at the outset that Count II of the amended complaint does not allege that NSTAR violated the Master Medical, Medex or dental benefit plans themselves. Rather, the amended complaint alleges that NSTAR violated the Commonwealth Pension Plan and a second document entitled "Personnel Reduction Program" ("PRP"). Both the Commonwealth Pension Plan and PRP are considered "welfare benefit plans" under ERISA, and therefore are not subject to the "stringent vesting, participation and funding requirements" imposed by ERISA on pension benefit plans.[4] *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir.1993). In fact, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). This does not mean, however, that such plans can never vest. It is certainly possi-

---

4. NSTAR, in passing, suggests that the PRP is not an ERISA plan and therefore cannot be the basis for a claim under Count II. NSTAR, however, only offers one case citation and no developed argumentation on this point. Accordingly, the argument is deemed to be waived. *See Rocafort*, 334 F.3d at 121.

ble for an employer to "oblige itself contractually to maintain benefits at a certain level in ways that are not mandated by ERISA." *Vasseur v. Halliburton Co.*, 950 F.2d 1002, 1006 (5th Cir.1992). But such an obligation "is not to be inferred lightly." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 139 (3d Cir.1999). The First Circuit has instructed district courts that the "resolution of questions concerning employer obligations under such plans must be tailored to avoid undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement." *Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir. 1992) (quotation marks omitted). In addition, several circuits require that employers agree to vested benefits in writing as part of the plan documents. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir.1998) (collecting cases), *cert. denied*, 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). With these principles in mind, the Court examines the facts of this case.

Count II of the amended complaint alleges that the plaintiffs "were entitled under the terms of the Commonwealth Pension Plan to the level of retiree medical care that they received at the time of their retirement for the rest of their life." It is undisputed, however, that the terms of the Commonwealth Pension Plan explicitly excluded health care coverage.[5] Simply put, the plaintiffs have failed to identify any provision of the Commonwealth Pension Plan that provides vested lifetime health insurance coverage.

The plaintiffs also claim as part of Count II that the PRP entitles them to a lifetime of vested health benefits. The PRP was a document that Commonwealth distributed to employees in 1997 when it decided to reduce its workforce. The PRP contained a section regarding health and dental care. This section defined eligibility criteria for participation in the company's health benefits program.[6] The plaintiffs claim that the eligibility requirements contained in the PRP amounted to promises of vested post-retirement health benefits. The crux of NSTAR's defense is that the eligibility requirements established by the PRP did not amount to vested post-retirement health benefits.

 It is clear that defining the eligibility requirements for participation in a retiree welfare benefits plan is not the same as granting vested rights. *See Williams v. Caterpillar, Inc.*, 944 F.2d 658, 666–67 (9th Cir.1991) ("Retiree medical benefits do not become vested once an employee becomes eligible or retires."); *Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir.1990) ("[T]he mere fact that employee welfare benefits continue in retirement does not indicate that the benefits become vested for life at the moment of retirement."). The Court understands "vested" welfare benefits to be benefits that are "forever unalterable." *Sprague*, 133 F.3d at 400. In contrast, eligibility requirements merely establish when or if a person may participate in a welfare benefits plan should an employer decide to offer one—keeping in mind, of course, that the plan "can be altered or terminated by an employer at any time." *Campbell v.*

---

**5.** The Commonwealth Pension Plan states that "health care programs themselves are not part of this Plan, are not subject to the terms and conditions of this Plan and may be amended or terminated from time to time by appropriate officers of the Participating Company...."

**6.** The eligibility criteria included the so-called "Rule of 75," which was a calculation based on a combination of the employee's age and years of service to the company.

*BankBoston,* 206 F.Supp.2d 70, 75 (D.Mass.2002). This Court must enforce ERISA plans according to their "literal and natural meaning." *Harris,* 208 F.3d at 277–78 (citation and quotation marks omitted). Simply put, the literal and natural meaning of the eligibility requirements contained within the PRP is not equivalent to promises of forever unalterable health benefits.[7] *See Sprague,* 133 F.3d at 400 ("the intent to vest must be found in the plan documents and must be stated in clear and express language." (citation and quotation marks omitted)). Accordingly, the welfare benefit plans at issue here did not provide for a lifetime of unaltered health insurance coverage. The plaintiffs' claim for breach of plan provisions in violation of ERISA is dismissed.

Lastly, NSTAR has moved to dismiss Plaintiff Joyce Baker for failure to prosecute because she has not responded to interrogatories served on August 1, 2003. In light of this Court's dismissal of all claims on summary judgment, NSTAR's motion regarding Joyce Baker is moot.

## III. *CONCLUSION*

NSTAR's motion for summary judgment is granted on all counts.

SO ORDERED.

---

7. Even if the eligibility requirements contained in the PRP could be construed as promises of unalterable health benefits, it should also be noted that the PRP stated "[t]his summary is not intended to offer detailed descriptions of the System's employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plan. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases." As already explained in detail, the terms of the Master Medical, Medex and dental benefits plan explicitly provided that the plans could be changed or cancelled.