DECISION
This case is before the Court on the Providence School Board's ("School Board") timely motion to vacate an arbitration award. On October 20, 2008, the arbitrator issued an award sustaining a grievance filed by the Providence Teachers Union ("Union") on behalf of retired teachers. The School Board filed a petition to vacate the award, and the Union counterclaimed, moving the Court to confirm. Jurisdiction is pursuant to G.L. 1956 § 28-9-14.
 I Facts and Travel
The School Board and the Union were parties to a collective bargaining agreement ("CBA") effective from September 1, 2004 through August 31, 2007. Pet'r's Ex. A. Appendix C of the CBA, at issue here, provided that health care insurance options were available to active and retired Providence teachers. Id. at 52-59. Beginning in 1989, the School Board utilized "working rates" to calculate the amount of health care premiums to be paid by active employees, retirees, and in some cases, their spouses. (American Arbitration Association Award Case No. 11 390 02633 06 ("Arbitration Dec.") at 7.) Insurance underwriters for the City of Providence provided the School Board with working rates on an annual basis. Id. In determining working rates, underwriters considered health care utilization, users' experiences *Page 2 
with the available health care plans, and marketplace costs.Id. The School Board maintained that working rates enabled it to "budget for healthcare costs and provide funding for the health care account." Id.
Prior to fiscal year ("FY") 2006-07, active and retired employees who participated in the same health care plan were considered part of the same premium group, meaning active and retired teachers paid the same health care premium rate. See id. Beginning in FY 2006-07, the method for calculating working rates was significantly altered. Specifically, active employees and retired employees were classified as two separate groups — one working rate was established for active teachers, and a second working rate was determined for retired teachers. See id. As a consequence of this change, health care premium rates for active teachers increased by only 10% while premiums for retirees increased by approximately 55%. Id. at 7-8. The School Board's rationale for the increase in the contribution of retired teachers was based on the finding that retirees used health care insurance "at a much higher rate than [active employees]" and "did not contribute nearly as much into the system as they exhausted in claims."Id. at 8.
On September 25, 2006, the Union filed a grievance on behalf of retirees, which ultimately culminated in arbitration. The grievance was premised upon the notion that an increase in working rates for retired teachers violated Appendix C, the past practice article, and Article 17-6 of the CBA, [1] which prohibits age-based discrimination. Id. at 8. The arbitrator framed the pertinent issues as follows: *Page 3 
 Is the grievance dated September 25, 2006 substantively arbitrable? If so, what shall be the disposition of the grievance? Id. at 1.
At arbitration, the School Board argued that the Union lacked standing to represent retirees. Id. at 11. The School Board contended that retired teachers were "not parties to the collective bargaining agreement or members of the bargaining unit," and therefore, the Union did not have the contractual authority to represent them. Id. at 12. Furthermore, the School Board asserted that the CBA failed to define the method that would be used to calculate health insurance premium rates. Id. The School Board claimed that because no provision restricted "how the Board calculate[d] the insurance rates," the grievance was not substantively arbitrable. Id.
In response, the Union argued that it had standing to represent retirees because the issue of standing had been resolved before Arbitrator Marcia Greenbaum in a 1995 dispute involving retiree benefits. Id. Furthermore, the Union posited that the CBA gave it the right "to file a grievance over an inequitable application or misinterpretation of a contract provision, and nothing in the [CBA] state[d] that this right is extinguished if the benefit is owed to a retiree." Id. Lastly, the Union asserted that the "undisputed past practice had been that there was only one group premium rate per plan." Id. Based on past practices, the Union believed that the School Board should be compelled to calculate the group premium rate using the pre-FY 2006-07 method. Id. at 13.
Following hearings held October 29, 2007 and June 6, 2008, the arbitrator issued a written decision on October 20, 2008. The arbitrator accepted the Union's position, finding that the issue of standing was addressed by Arbitrator Greenbaum. Seeid. at 9-10, 14-16. Because the arbitrator declined to depart from the view adopted by Arbitrator Greenbaum, he found the Union had standing to represent retirees. Id. at 15-16. In addressing the merits of *Page 4 
the grievance, the arbitrator concluded that the provisions contained in Appendix C of the CBA were unclear and ambiguous.Id. at 16. The arbitrator based his determination of contract ambiguity on the CBA's failure to define "Providence School Department's group premium rate" and on the CBA's failure to utilize the phrase "group premium rate" in the section that governed basic health insurance for those who retired on or after September 1, 2004. Id. The arbitrator ultimately concluded that the Union met its burden of proving the meaning of "group premium rate" through demonstrating the existence of past practices. Id. at 17. Consequently, the arbitrator found that the School Board violated Article 19 and Appendix C of the CBA when it separated active employees and retirees into two distinct groups for the purpose of calculating working rates.Id. at 19. The arbitrator required the School Board to recalculate insurance premiums for retirees using the pre-FY 2006-07 calculation method and ordered the School Board to "make whole the retirees and spouses for any extra premium charges."Id.
Following the issuance of the Award, the School Board filed the instant petition to vacate pursuant to G.L. § 28-9-18(a)(2). The School Board avers that the arbitrator exceeded his power by resolving a dispute that, in its view, was not substantively arbitrable on two grounds. First, the School Board relies onArena v. City of Providence in which our Supreme Court held "the ordinary meaning of the word employee does not include retired workers because retirees have ceased to work for another for hire."919 A.2d 379, 381, 389 (R.I. 2007) (internal citation omitted.) TheArena Court went on to conclude that retired firefighters were not covered by the Firefighter Arbitration Act ("FFAA") because the ordinary meaning of "firefighter" and the definition included in the FFAA could not be construed to include retirees.Id. at 389. The School Board argues that just as retired firefighters were not considered active employees under the FFAA definition in Arena, retired teachers cannot be considered certified teachers as defined *Page 5 
by the Arbitration of School Teacher Disputes Act ("ASTDA"). According to the School Board, the parties' CBA makes specific reference to § 28-9.3-1 et seq. of the ASTDA, which permits certified teachers to engage in the collective bargaining process. In drawing an analogy to the Arena decision, the School Board cites § 28-9.3-2(b), which defines a "certified teacher" as a person who is "employed" and "engaged in teaching duties." Second, the School Board argues that the arbitrator exceeded his authority because his award was not based on a passably plausible interpretation of the CBA. The School Board maintains that the CBA contains no language which addresses the calculation or determination of the Providence School Department group premium rate for retired teachers. As a result, the School Board asserts that the arbitrator exceeded his powers when he fashioned an insurance calculation that was neither intended by both parties nor set forth within the CBA.
In response, the Union contends that there is no basis in law for vacating the Arbitration Award. First, the Union argues that it has standing to represent retirees because it seeks to enforce bargained-for benefits that were negotiated on behalf of teachersbefore they retired, but did not vest until retirement.See Resp't's Mem. at 11. Second, in addressing the merits of the dispute, the Union relies on Article 20 of the CBA which authorizes it to grieve any and all matters which emanate from the CBA. The Union submits that because the instant dispute arises from the School Board's refusal to provide health care insurance at a cost specified in Appendix C of the CBA, this dispute falls within the definition of a grievance and is therefore substantively arbitrable.
 II Standard of Review
Courts are required to review "arbitral awards under an exceptionally deferential standard[.]" N. ProvidenceSch. Comm. v. N. Providence Fed'n of Teachers, Local 920, Am. Fed'nof Teachers, 945 A.2d 339, 347 (R.I. 2008). *Page 6 
However, before an arbitration award is owed a duty of deference, the subject matter of the arbitration must be properly arbitrable.Vose v. Rhode Island Bhd. of Corr. Officers,587 A.2d 913, 913 (R.I. 1991). The question of whether or not a particular dispute is arbitrable is a question of law subject tode novo review. State v. Rhode Island Council 94,925 A.2d 939, 944 (R.I. 2007).
Rhode Island General Laws § 28-9-18(a) specifies the limited grounds upon which a labor arbitration award may be vacated:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13.
Only one of those three circumstances is at issue in the instant appeal: under § 28-9-18(a)(2), the court must vacate an award "[w]here the arbitrator or arbitrators exceeded their powers."State Dep't of Corr. v. Rhode Island Bhd. of Corr.Officers, 867 A.2d 823, 828 (R.I. 2005). An arbitrator exceeds his powers "by resolving a non-arbitrable dispute or if the award fails to "draw its essence' from the agreement, if it was not based upon a "passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." Woonsocket Teachers' Guild, Local 951, AFT v. WoonsocketSch. Comm. 770 A.2d 834, 837 (R.I. 2001) (quoting State Dep'tof Children, Youth and Families v. Rhode Island Council 94,713 A.2d 1250, 1253 (R.I. 1998)).
An arbitrator also exceeds his or her authority if he or she "ignores clear-cut contractual language or assigns to that language a meaning that is other than that which is plainly expressed[.]"State v. Rhode Island Employment Sec. Alliance, Local 401, SEIU,AFL-CIO, 840 A.2d 1093, 1096 (R.I. 2003). *Page 7 
This Court notes that "the statutory authority to vacate an arbitration award where the arbitrator[] exceeded [his or her] powers does not authorize a judicial re-examination of the relevant contractual provisions." State Dep't of Mental Health,Retardation, Hosps. v. Rhode Island Council 94, A.F.S.C.M.E.,AFL-CIO, 692 A.2d 318, 323 n. 11 (R.I. 1997) (internal quotations omitted). Lastly, when a party claims that an arbitrator has exceeded his or her authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made. Coventry Teachers'Alliance v. Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980).
 III Analysis A Union's Standing To Represent Retirees
The parties' dispute first concerns whether or not the Union had standing to file a grievance on behalf of retired teachers. The arbitrator began his analysis of standing by addressing a 1995 grievance submitted to arbitration, in which the School Board argued that the Union lacked standing to bring a grievance on behalf of retirees regarding benefits provided under the CBA. (Arbitration Dec. at 9.) From the School Board's perspective, the "only recourse for the retirees was through the courts." Id. At arbitration, Arbitrator Marcia Greenbaum considered two 1970s cases in which neither the Superior Court nor the Supreme Court held that the Union lacked standing to grieve or arbitrate cases on behalf of retirees. Id. at 10, 15-16;see generally Providence Teachers Union,Local 958, Am. Fed'n of Teachers, AFL-CIO v. McGovern,113 R.I. 169, 319 A.2d 358 (1974); Providence Teachers Union,Local 958 v. Sch. Comm., 108 R.I. 444, 276 A.2d 762 (1971). Consequently, Arbitrator Greenbaum determined that the Union had standing to represent retirees in that case. *Page 8 
In the instant case, the arbitrator accepted Arbitrator Greenbaum's reasoning, stating "[a]rbitrators will normally apply prior arbitration awards involving the same parties, where the contract language has not changed, unless the prior awards are clearly erroneous." Id. at 14. Although the arbitrator readily admitted that Arbitrator Greenbaum's rationale was "undermin[ed]" by the Rhode Island Supreme Court in the 2007 Arena decision, he found Arena distinguishable. Id. at 15. The arbitrator concluded that Arena was "not relevant to the analysis of whether a Union may arbitrate to enforce a provision negotiated on behalf of people who were then active employees, but who have since retired." Id. Ultimately, the arbitrator decided that because the Superior Court and Supreme Court, on appeal, did not conclude that the Union lacked standing to represent retirees in the 1974 and 1971 Providence Teachers Union cases, the Union possessed standing in the instant case. Specifically, the arbitrator noted:
 [w]hen the Rhode Island Supreme Court had before it in 1971 and 1974 arbitration awards ordering severance payments to retirees due under the collective bargaining agreement, the Court enforced the awards. It did not find that the Union did not have the standing or authority to file a grievance to protect the negotiated benefits. Hence, it is found that the grievance in this case is substantively arbitrable. (Arbitration Dec. at 15-16.)
In reviewing the arbitrator's decision, this Court recognizes that the question of whether the Union has standing to represent retirees is an issue of arbitrability. According to one source,
 [i]t can be argued that any issue the resolution of which forecloses consideration of the merits of the dispute is an issue of arbitrability. If the arbitrator cannot or should not hear the merits, he or she has no jurisdiction or the case is not arbitrable. This broad interpretation of arbitrability includes not only whether the procedures to which they agreed were followed. This includes questions of timeliness, form, mootness and standing. 1 Labor and Employment Arbitration, § 8.01[2] at 8-1 (Tim Bornstein, et al eds. 2010) (emphasis added). *Page 9 
Because the issue of arbitrability is a question of law, subject tode novo review by this Court, it gives no deference to the arbitrator's legal conclusions. See Rhode Island Council94, 925 A.2d at 944; see also State Dep't ofMental Health, Retardation, Hosps., 692 A.2d at 323 (holding "the issue of whether a dispute is arbitrable concerns a question of law and is subject to a broader standard of review than is the arbitrator's decision on the merits[]").
To determine whether the Union had standing to represent retirees, this Court considers federal and state decisions which have addressed the rights of retirees in the collective bargaining context. In Allied Chemical Alkali Workers of Am. v. PittsburgPlate Glass Co. ("Allied Chemical"), the United States Supreme Court was presented with the question of whether or not a mid-term unilateral modification of pension and insurance benefits for retirees constituted an unfair labor practice. 404 U.S. 157, 159-60 (1971). The Supreme Court determined that the term "employee" as found within the National Labor Relations Act "is not to be stretched beyond its plain meaning[,] embracing only those who work for another for hire."Id. at 166 In addition to concluding that retirees were not employees "within the meaning of the collective bargaining obligations of the [NLRA]," the Court held that retirees "were not and could not be employees included in the bargaining unit."Id. at 172. The Court made this conclusion because retirees did "not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit."Id. at 173. Consequently, the Court held that because retirees "are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer." Id. at 182, n. 20.
In Anderson v. Alpha Portland Industries, the Court of Appeals for the Eighth Circuit held a "union owes no duty of fair representation to retirees since the union's duty runs only to employees within the bargaining unit for whom the union acts as exclusive bargaining *Page 10 
representative." 727 F.2d 177, 181 (8th Cir. 1984). It follows, then, that "absent a clear and unmistakable inclusion of retirees under the grievance procedure, they are not covered by the grievance procedure. . . ." Elkouri Elkouri, How Arbitration Works
208 (Alan Miles Ruben ed., 6th ed. 2003).
In 2007, the Rhode Island Supreme Court addressed and ultimately accepted the rationale articulated by the United States Supreme Court in Allied Chemical. Arena, 919 A.2d at 389. InArena, the Supreme Court was asked to determine whether the Superior Court or an interest arbitration panel had the exclusive subject matter jurisdiction to hear retired firefighters' and police officers' challenge to the City of Providence's cost-of-living adjustment ("COLA") calculations in city ordinances.Id. at 388-390. The defendants argued that the Superior Court lacked subject matter jurisdiction to determine the plaintiffs' appropriate benefits because the Firefighter Arbitration Act ("FFAA") was the controlling authority for determining unresolved collective bargaining issues. Id. at 388.
In accepting the view articulated in Allied Chemical, our Supreme Court decided that the ordinary meaning of "firefighter" and the definition included in the FFAA could not reasonably be construed to include retirees. Id. at 389. This perspective was found not only because retired firefighters were no longer "permanent uniformed members" of the fire department, but also because retirees and current employees of the fire department did not share a community of interests. Id. at 389-90. Accordingly, the Court held that the Superior Court had the exclusive jurisdiction to determine the amount of the plaintiffs' COLA benefits. Id. at 390.
In addition to considering the aforementioned decisions, this Court also examines the parties' CBA, which makes specific reference to Rhode Island General Laws 28-9.3-1 et seq. — *Page 11 
the Arbitration of School Teacher Disputes Act ("ASTDA"). According to the Preamble of the parties' CBA,
 [w]hereas, Rhode Island General Laws 28-9.3-1 et seq., the Arbitration of School Teacher Disputes, accords to certified public school teachers the right to organize, to be represented, to negotiate professionally and to bargain on a collective basis with school committees covering hours, salary, working conditions and other terms and conditions of professional employment. . . . CBA at 1 (emphasis added).
The ASTDA defines a "certified teacher" as
 certified teaching personnel employed in the public school systems in the state of Rhode Island engaged in teaching duties, including support personnel whose positions require a professional certificate issued by the state department of education and personnel licensed by the department of health; or other non-administrative professional employees. Section 28-9.3-2(b) (emphasis added).
Notably absent from the statutory definition of "certified teacher" is any reference to retired teaching personnel. Moreover, according to Article 1, Section 1 of the CBA,
 [t]he Board recognizes the Union as the exclusive bargaining representative for all those persons in the bargaining unit which consists of all certified teaching personnel, long term substitute teachers, long term substitute teachers in-pool, home visitors, social workers and nurses but which excludes all administrators and per-diem substitute teachers.
Once again, absent from Article 1, Section 1 is any explicit reference to retired teachers. Furthermore, pursuant to Article 2, the term "teacher" as used in the CBA means "a personemployed by the Board in the bargaining unit as described in Article 1." (Emphasis added.) In this case, the meaning of the word "teacher" was clearly accepted by both the School Board and the Union to mean a "person employed by the Board" under Article 2 of the CBA. Though the Union was recognized to be the "exclusive bargaining representative" as defined in Article I, Section 1, the clear and unmistakable reading of the pertinent sections of the CBA did not *Page 12 
include retired teachers because such a finding would directly contradict the definition of "certified teacher" found at § 28-9.3-2(b).
Consequently, this Court finds that the arbitrator erred when he determined that Arena was "not relevant" in the instant case.See Arbitration Dec. at 15 (where the arbitrator statedArena was "not relevant to the analysis of whether a Union may arbitrate to enforce a provision negotiated on behalf of people who were then active employees, but who have since retired[]"). In this Court's view, Arena is relevant and controlling because the definition of certified teacher provided in the ASTDA cannot be reasonably construed to include retirees. Furthermore, active teachers and retired teachers, in this case, do not share a community of interests. See Arena, 919 A.2d at 389-90.
Ultimately, this Court concludes that the arbitrator exceeded his authority because he decided a matter that was not substantively arbitrable. State Dep't of Corr., 867 A.2d at 829 (holding an arbitrator exceeds his or her powers if the arbitrator decides an issue that is not arbitrable). The Court asserts that the School Board has met its burden to demonstrate that the arbitrator exceeded his authority, and for those reasons, the award is vacated.See Coventry Teachers' Alliance,417 A.2d at 888 (holding when a party claims that an arbitrator has exceeded his authority, the claimant bears the burden of proving this contention).
 B Arbitrability of Group Plan Rates
Assuming arguendo that the Union had standing to represent retirees, this Court would be required to determine whether the dispute over the School Board's calculation of the "group premium rate" is arbitrable, as the "preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance." Rhode Island Court Reporters Alliance v. State,591 A.2d 376, 378 (R.I. 1991) *Page 13 
(citing United Steelworkers of Am. v. Am. Mfg. Co.,363 U.S. 564, 570-71, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960) (Brennan, J., concurring)).
In the instant case, the arbitrator determined:
 [w]hile there is no dispute that the parties negotiated detailed provisions relating to the health insurance coverage available for retirees and their spouses, those provisions are not clear and unambiguous on their face. First, Appendix C does not include a definition of "the Providence School Department's group premium rate." Second, that term is only set forth in C-9.5, which relates to Delta Dental and additional Blue Cross medical coverage for retirees; and C-9.8, which relates to medical and dental coverage for retirees; and C-9.8, which relates to medical and dental coverage for spouses and domestic partners of retirees. There is no express reference to the group premium rate in C-9.2.1, the section governing the basic health insurance available to those who retire on or after September 1, 2004. While that section states that these retirees shall pay "a co-share of the premium payment equal to no less than the co-share amount paid by an active teacher," it does not specify how that co-share shall be computed. (Arbitration Dec. at 16) (emphasis added).
Following this determination, the arbitrator concluded that Appendix C of the CBA was ambiguous. Id. In his view, such ambiguity permitted the arbitrator to consider past practices in accordance with Article 19 of the CBA "to discern the parties' mutual intent" and "to fill in gaps in language, [because] there [was] no express language to give clear guidance." Id.
"Contract interpretation is a question of law; it is only when the contract terms are ambiguous that construction of the terms becomes a question of fact." Clark-Fitzpatrick, Inc./FrankiFound. Co. v. Gill, 652 A.2d 440, 443 (R.I. 1994). A "contract is ambiguous only when it is reasonably and clearly susceptible of more that one interpretation." Garden CityTreatment Ctr., Inc. v. Coordinated Health Partners, Inc.,852 A.2d 535, 541-42 (R.I. 2004) (citations omitted) (emphasis added). *Page 14 
Here, the arbitrator readily acknowledged that the section of the CBA which enumerates health care benefits "[did] not include a definition of "the Providence School Department's group premium rate.'" (Arbitration Dec. at 16.) Despite acknowledging that the CBA was silent on how the group premium would be defined or calculated, the arbitrator reached the conclusion that the CBA was ambiguous. Given that the issue of arbitrability is a question of law, subject to de novo review, it is this Court's view that the CBA's silence or failure to define a term did not give rise to a finding that it is ambiguous. Key v. Allstate Ins. Co.,90 F.3d 1546, 1549 (11th Cir. 1996) (holding contract ambiguity does not exist simply because a contract fails to define a term);Lyon Dev. Co. v. Bus. Men's Assurance Co. of Am.,76 F.3d 1118, 1124 (10th Cir. 1996) (concluding "[s]ilence on a subject does not create an ambiguity within a contract").
From a review of the CBA, the Court finds that the parties did not intend to make the calculation of the group premium rate a subject of the contract. There is no evidence whatsoever that the parties ever attempted to negotiate the means of calculation of the group premium rate. The Court notes that although an employer can contractually bind itself to maintain health benefits at a certain level, "such an obligation is not to be inferred lightly."Utility Workers, Local 369, Robert J. Dupre v. NSTARElectric Gas Corp., 317 F. Supp. 2d 69, 76 (D. Mass. 2004) (internal citation omitted). Also, the Court notes the following advice of Justice Weisberger in his dissent in Jacinto v.Egan, which while not controlling, is worthy of consideration:
 I submit that when dealing with the sovereign power of the state and its subdivisions, clear expression of willingness should be essential to the submission of matters of magnitude to a third party for determination. 120 R.I. 907, 924, 391 A.2d 1173, 1182 (1978) (Weisberger, J., dissenting). *Page 15 
This Court determines that although retirees were entitled to health care benefits pursuant to the terms of Appendix C, all that was bargained for was that premiums would be based on the Providence School Department group premium rate. To suggest, in the case at hand, that the CBA mandated the group premium rate be determined in the same way indefinitely is to impermissibly add to the parties' contract.
The Court concludes that calculation of the group premium rate was not an arbitrable issue. Therefore, the arbitrator exceeded his authority when attempting to resolve a non-grievable issue.State Dep't of Corr., 867 A.2d at 829 (holding an arbitrator exceeds his or her powers if the arbitrator decides an issue that is not arbitrable). Accordingly, the Court is compelled to vacate the arbitrator's award pursuant to § 28-9-18(a)(2).
 Conclusion
For the foregoing reasons, the Court grants the School Board's petition to vacate the arbitration award in accordance with § 28-9-18(a)(2). Counsel for the prevailing party shall submit an appropriate judgment for entry in accordance with this Decision.
[1] According to the arbitrator's award, "[d]uring the arbitration, the Union did not introduce any evidence regarding an age discrimination theory, nor did it argue such a claim in its brief." Accordingly, this Court need not address whether the change in working rates violated Article 17-6 of the CBA when ruling upon the School Board's petition to vacate. *Page 1